(Decided 14th January, 1868.)

HENRY R. HAZLEHURST *vs.* STEPHEN MORRIS, *et al.*

## *Appeal—Practice.*

An order of the Circuit Court which does not settle and conclude the rights involved in the action, and does not deny to the party the means of further prosecuting or defending the suit, is not so far final as to be a proper subject of appeal; and an appeal from such an order will be dismissed.

Where a party institutes a suit, and the summons proves ineffectual to bring the defendant into Court, and is returned by the sheriff, in order to keep the suit alive, the summons must be regularly renewed from term to term, until the defendant is taken. The omission so to do operates a discontinuance of the action.

APPEAL from the Circuit Court for Howard County.

The facts of the case will be found sufficiently stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON and MILLER, J.

*George H. Williams* for the appellant.

This was an action of assumpsit brought by the appellees against the appellant and one James Murray, as partners, to recover the amount of two bills of exchange—the *narr.* contained also the common counts; it was filed on the 30th August, 1862, and on the same day the writ was issued to the September term; at which term the sheriff made his return of the same "*tarde.*" There was no second writ issued at the September term, but the whole of said term was allowed to pass without the issue of a writ in the case, and the action was in law discontinued. On the 28th August, 1863, about a year after the issuing of the first writ and a few days only before the expiration of the March term of 1863, a writ purporting to be a second writ in the same cause was issued. The sheriff returned the appellant, "summoned," James Murray, "not found." Upon the return of the writ, the appellant appeared and laid a rule upon the plaintiffs to file a declaration; and the clerk by his docket entries appearing to treat the first and second summons as one continuing case, the motion was made to strike out said entries as well as to require the appellees to file a declaration to the second writ. The Court upon argument, overruled the motion, directed the cause to be brought up by regular continuances as if there

had been no omission to re-issue to the March term of 1863; and laid a rule upon the appellant to plead. It is therefore contended in behalf of the appellant, that the failure to issue a second writ to the succeeding term after the return of the first, worked an entire discontinuance of the cause. *Bennington vs. Dinsmore,* 2 *Gill,* 354; 2 *Tidd's Prac.,* 733; 2 *Sand. Plead. & Ev.,* 963. That by the Act of 1856, ch. 112, sec. 6, ch. 1, it is left optional with the plaintiff to renew his writ or not, and it is only when it is so renewed, that it remains in force and is available.

*W. Pinkney Whyte* for the appellees.

This appeal is taken from the order of the Court below, overruling the motion of the appellant at the March term, 1864, "to strike out all the docket entries in the * * * cause, and lay a rule on the appellees to file their declaration in said cause." In behalf of the appellees, the Court is moved to dismiss this appeal, because the order appealed from is not such "a judgment or determination of a Court of law," from which an appeal will lie.

It is settled, by authority, that "an appeal cannot be prosecuted, until a decision has been had in the Court below, which is so far final, as to settle and conclude the rights involved in the action, or denying to the party the means of further prosecuting or defending his suit;" and "that when the proceedings below shall be terminated, an appeal will then lie, and all the errors of the Court below, in the progress of the cause, will be proper subjects for complaint of the party and for the correction of the Court of Appeals." *Boteler & Belt vs. The State, Chew & Co.,* 7 *G & J.,* 109; *Welsh vs. Davis, &c.,* 7 *Gill,* 364; *Wheeler, et al., vs. The State, use of Bateman,* 7 *Gill,* 33; *Code Pub. Gen'l Laws, Art.* 5, *sec.* 3; *Green vs. Hamilton,* 16 *Md. Rep.,* 329; *Evans' Prac.,* 557, (*ed.* 1867.)

There was nothing, therefore, in the order appealed from, "settling and concluding the rights involved in this action or denying to the appellant the means of defending the suit;"

so far from it, the Court immediately passed an order laying a rule upon him to plead to the declaration filed in the cause and thus to make any defence he had, to the action.

The motion to dismiss ought, therefore, to prevail, but if it should not, the appellees will contend, that there was no error in the Court below in its refusal to grant the motion of the appellant.

The suit was brought to the September term, 1862, of the Circuit Court for Howard county, and the *narr.* regularly filed. The writ issued to this term was returned "*tarde,*" but it does not appear from the record, whether it was renewed to March term, 1863, or not, as it was the duty of the clerk to do, as of course, but it was renewed to September term, 1863.

The Act of 1856, ch. 112, was not in force at this time, as it was repealed by the Code in 1860. *Code Pub. Gen'l Laws, Art.* 75, *sec.* 1.

The universal practice in this State, at that time and for many years before, was, for the clerk to renew all unserved writs to the succeeding term, unless otherwise ordered. No order for renewal was ever given, except verbally at the call of the docket. It was the duty of the clerk to issue the writ to the March term, 1863, and his omission to do it, if such omission plainly appeared, did not discontinue the cause. The practice in such cases is, when the writ is served, to enter up the continuances. *Evans' Practice,* 109, *(ed.* 1867;) *Dennison, adm'r, d. b. n. c. t. a., of William Woods vs. John Trull, Dec.,* 1834; *Mulliken vs. Duvall,* 7 *G. & J.,* 358.

GRASON, J., delivered the opinion of this Court.

On the 30th of August, 1862, the appellees instituted their suit against the appellant and James Murray as partners, in the Circuit Court for Howard county, and, on the first day of the ensuing September term, the summons was returned by the sheriff "*tarde.*" It does not appear, from the record, that the summons was renewed to the March term, 1863, but on the 28th day of August of that year, a second summons

Hazlehurst *vs.* Morris, *et al.*

was issued, returnable to the ensuing September term, and at said term was returned endorsed, "summoned Henry Hazlehurst, not found James Murray."

The appellees had declared against the defendants, named in the summons, when it was first issued on the 30th August, 1862. On the third Monday in March, 1864, the appellant, having appeared to the action, moved the Court to strike out all the docket entries in the cause, and to lay a rule on the appellees to file their declaration. The Court over-ruled the motion; and, on motion of the appellees, ordered the clerk to bring up the cause from the appearance docket of 1862, by entering regular continuances, "as if no omission by the clerk had taken place to re-issue to the March term of 1863." From that order this appeal was taken, and two questions are presented for the consideration of this Court: the first, arising on a motion to dismiss the appeal is, whether the order, passed by the Court below, was of such a nature as to entitle the party to an appeal; and the second, whether there was error in passing said order.

1st. The law has been clearly settled in this State, that "no appeal can be prosecuted to this Court until a decision has been had in the Court below, which is so far final, as to settle and conclude the rights of the party involved in the action, or denying to the party the means of further prosecuting or defending the suit. When the proceedings below shall be terminated, an appeal will then lie, and all the errors of the Court below, in the progress of the cause, will be proper subjects for complaint of the party, and for the correction of this Court." 7 *G. & J.*, 112; 7 *Gill*, 366; 16 *Md. Rep.*, 328. The order, passed in the Court below, did not settle and conclude the rights involved in the cause; nor was it of such a character as to deny to the party the means of defending the suit, and was not, therefore, so far final as to be a proper subject of appeal. This appeal must, therefore, be dismissed.

This Court will not, ordinarily, decide questions which are not material; but as the counsel for both parties to this cause,

have expressed the desire that the remaining question should be determined, in order that further litigation and expense may be avoided, and they having fully argued the same; the Court will, in this instance, depart from its usual practice and consider:

2d. Whether there was error in the passage of the order directing the cause to be brought forward, by entering regular continuances on the docket, from the appearance to the trial docket of the Court below?

It has been urged by the counsel of the appellees that it was, at the time of the adoption of the Constitution of 1851, and by the first section of the 75th article of the Code of Public General Laws, is now the established practice of the Courts of this State to bring forward causes, by entering regular continuances upon the docket, where one summons has been issued and not served, and one or more terms suffered to pass without renewing it, before the defendant has been brought into Court; and the cases of *Mullikin vs. Duvall*, 7 *G. & J.*, 358, and *Dennison, adm'r of Woods, vs. Trull*, decided by this Court in 1834, and not reported, are relied upon as showing the existence of such practice. We do not think that these authorities will warrant such a conclusion. In the case of *Mullikin vs. Duvall*, the former obtained a judgment against the latter in 1819, and in February, 1820, a *fieri facias* was issued and levied upon the land of the defendant, which remained unsold for want of bidders. No further proceedings in the cause appear to have been had until 15th May, 1832, when a *scire facias* was issued and served upon Gabriel Duvall, *terre-tenant* of the defendant in the judgment. Gabriel Duvall appeared and pleaded the statute of limitations. Mullikin replied that, within twelve years after the rendition of the judgment, a writ of *fieri facias* issued thereon, to wit in February, 1820, at the suit of the plaintiff, and that, on the second Monday in June thereafter, the sheriff made return that he had levied upon the land of Lewis Duvall, which remained on hand for the want of

bidders. To this replication the defendant in the *scire facias* demurred generally, the plaintiff joined in demurrer, and the Court sustained the demurrer, and the plaintiff appealed. The question presented upon that appeal was, whether the statute of limitations began to run from the date of judgment, or from the return of the *fieri facias*, and the judgment of the Court below was affirmed. The Court said, "it is true that a judgment may be kept alive and in full legal operation for an indefinite time, by issuing an execution upon it, within three years, and if such execution is not effective, by renewing it from term to term; but if it is not regularly continued, and a *scire facias* to renew it becomes necessary, by the lapse of three years, the time of limitation is to be computed, not from the return of the writ, but from the judgment, or the time when the process of execution could legally issue thereon." The Court quoted from 2 *Tidd's Practice* where it is said that "if a *fieri facias* be taken out within the year and not executed, a new writ of execution may be sued out at any time afterwards, without a *scire facias*, provided the first writ be returned and filed and continuances entered from the time of issuing it."

The law presumed that the judgment was satisfied after the lapse of a year and a day, and therefore, after that lapse of time a *scire facias* was necessary to revive it.

Tidd goes on further to say, "that where the continuances are entered on the roll, they operate as a continuing demand of the debt by the plaintiff, and seem to repel the legal presumption of satisfaction, which would otherwise arise from the lapse of time." It is urged by the appellees, that the passages, above quoted, show it to be the practice to keep alive judgments by the issue and return of one *fieri facias*, and then by merely entering continuances upon the record, without renewing the executions, and that the same practice prevails as to suits. We know of no such practice in this State, as applicable to either suits or executions, and are of opinion that this Court announced the only practice, when it stated that a

judgment might be kept alive for an indefinite time, by issuing a *fieri facias* and having it returned, and then regularly renewing it from term to term.

In the case of *Dennison, adm'r of Woods vs. Trull,* the writ was issued the 28th day of March, in the year 1823, to the following September term of Baltimore County Court, when it was returned "*non est.*" The record shows that it was regularly renewed to each succeeding term until the fourth Monday of March, in the year 1826, when it was returned "*cepi.*" The plaintiff then filed his declaration; the defendant filed with other pleas that of limitations, and the plaintiff joined issue on the other pleas, and to the plea of limitations replied, first, that the defendant promised as alleged within three years next before the impetration of the writ; and secondly, that on the 28th March, 1823, he prosecuted his writ of *capias ad respondendum* out of Baltimore County Court, and then sets out particularly a regular renewal of the writ from term to term until the defendant was taken, and sets out fully the record.

The defendant, in his rejoinder, did not deny the issuing of the writs as alleged, but averred that the first writ was returned "*non est;*" that the sheriff returned several of the writs, intervening between the first and last return, "never came to hand," and alleged, that said returns had been so entered upon the docket, and that the entries had been erased and the return of "*non est*" inserted by some person or persons unknown, and denied that there was such a record as was alleged by the plaintiff. To this rejoinder the plaintiff demurred, the defendant joined in demurrer, and the judgment being against the defendant, he appealed, and this Court affirmed the judgment.

This Court filed no opinion in the case and we are left to an examination of the record alone, for the grounds of the affirmance of the judgment. The replication of the plaintiff alleged, and the record shows, that the writ was regularly renewed from term to term till the defendant was taken, and

Hazlehurst *vs.* Morris, *et al.*

this was not denied by the defendant in his rejoinder; but he relied solely upon the ground that the returns of the sheriff, after his first return and before the defendant was taken, had been altered by some one. The regular renewal of the writ from term to term, without any omissions, kept the action alive and prevented the bar of limitations and these results could not be affected by the form of the sheriff's returns to the writs, intervening between the first and last issue. When the plaintiff, after the first return, had his writ regularly renewed, he did all that was in his power to do, and all that was required of him by the law; and it must have been upon this ground that this Court affirmed that judgment. So far from that case sustaining the views of the appellees, it shows the practice to have been directly the reverse of that contended for by them. We do not find any authority for such practice, but are of opinion that such an one ought not to be tolerated. Plaintiffs might lie by for years, and then bring defendants into Court, after their witnesses were dead, or their proofs lost or destroyed, and obtain judgments against them upon claims not founded in justice; and the practice be thus used as a means of injustice and oppression. This Court could not sanction a practice, so fraught with mischief, unless it were so long and so clearly established as to have the force of positive law. Where a party institutes a suit and the summons proves ineffectual to bring the defendant into Court and is returned by the sheriff, in order to keep the suit alive, the summons must be regularly renewed from term to term until the defendant is taken. The omission so to renew it operates a discontinuance of the action. There is therefore error in the order of the Court below.

*Appeal dismissed.*

(Decided 30th January, 1868.)